## ARTZ v. THE C., R. I. & P. R. R. Co.

1. **Negligence:** RAILROADS: RATE OF SPEED. While unusual speed of railway trains does not of itself constitute negligence, yet it may be considered with other circumstances in determining the degree of care exercised.

2. **Evidence:** CROSS-EXAMINATION. A party who has questioned his witness upon a given subject cannot object to the cross-examination of the witness upon the same subject, or exclude answers of the witness contradicting his statements upon the examination-in-chief.

3. ———: DISMISSAL OF WITNESS: USE BY THE OTHER PARTY. Where a witness has been dismissed by the party calling him, and he then testifies, upon examination by the other party, to new matter, he becomes the witness of the latter, and it is competent for the party first calling him to contradict him in respect of the new matter to which he has testified.

4. **Negligence:** RAILROADS: QUESTION OF FACT. The questions whether or not there were obstructions obscuring the sight of an approaching train to one about to drive upon the track, and whether or not plaintiff, under the admitted facts, was using his senses to avoid danger, are questions of fact for the jury. SEEVERS, CH. J., and ROTHROCK, J., dissenting.

*Appeal from Muscatine Circuit Court.*

THURSDAY, OCTOBER 5.

ACTION to recover for personal injuries sustained by plaintiff from having been struck by a locomotive of defendant when crossing its railroad. The accident, it is alleged, occurred on account of the negligence of defendant's employes operating the locomotive and train to which it was attached. There was a trial to a jury, and a verdict and judgment for plaintiff in the sum of $7,100. Defendant appeals. The cause has twice before been in this court. The first judgment was for $5,000, the second for $5,500. See 34 Iowa, 154; 38 Id., 293.

*Richman & Carskadden,* for appellant.

*Cloud & Broomhall* and *Kagy & Lander,* for appellee.

BECK, J.—I.  The Circuit Court, upon the trial, gave the jury the following instruction: "There is no law in this State requiring railroad companies to cause bells to be rung or whistles sounded upon the approach of their trains and loco-motives to crossings of public roads; and the failure to ring bells or sound whistles, at such times and places, will not, of itself, prove carelessness and negligence so as to subject said companies absolutely to liability for damages occasioned by their trains at crossings."

The instruction proceeds to announce other rules, but it is not necessary to quote it further, as the objection we are about to consider is founded upon the language of the part above set out.

It is urged that the instruction is rendered erroneous by the use of the word *absolutely*, which engrafts upon it the idea that the mere omission of the signals creates a modified lia-bility.  But the word has no such effect.  It conveys the thought that the failure to give the signals, without relation to or unconnected with other matters, does not create liability.

II.  It is next insisted that "the court erred in charging that the rate of speed, though not regulated by law, might be considered with other facts tending to establish negligence."  While a railway is not restricted by law to any rate of speed, unusual speed at cross-ings, or at other places where men or brutes may be exposed to danger from passing trains, may be considered in connec-tion with other matters, as the failure to give signals of the approach of the train, and the like, to determine the want of care on the part of those operating it.  This rule has always been recognized in this State.  *Wilson v. B. & M. R. Co.*, 33 Iowa, 591; *Plaster v. The Ill. Cent. R. Co.*, 35 Id., 449. Unusual speed will not, of itself, establish negligence, and the jury were so directed in a subsequent instruction.

1. NEGLI-GENCE: rail-roads: rate of speed.

III.  A witness, who is a minister of the Gospel, was introduced by defendant, and testified that he visited the plaintiff shortly after he was injured.  He testi-fied to conversations had with plaintiff in regard to the manner of the injury and the circumstances under which

2. EVIDENCE: cross-examin-ation.

it was received, and other matters. Upon the direct examination, he stated that he offered plaintiff the consolations of religion. Upon the cross-examination, he was asked if he refused to pray with plaintiff, and replied that he did not. Plaintiff was permitted to testify, in rebuttal, that the witness was requested to pray for him, and refused. The admission of this evidence is made the ground of an objection.

The defendant introduced into the evidence the subject of the witness offering religious consolation to plaintiff, and upon his cross-examination he was asked, and responded, without objection, as to his refusal to pray for plaintiff upon his request. This was clearly a continuation of the subject introduced by defendant, and objection cannot now be raised by the same party to the competency of the evidence. Neither can defendant, having introduced the subject and drawn out the evidence, now object to the contradiction thereto offered by plaintiff.

IV. A witness was called by the plaintiff, and testified to nothing of benefit to either party; he was then dismissed by 3. ——: dis- plaintiff's attorney. He was then permitted to testify to a conversation had with plaintiff, wherein he was offered pecuniary consideration on condition his evidence should be beneficial to plaintiff. The plaintiff was afterward permitted to contradict his statements; and objection is now made to the evidence on the ground that plaintiff was allowed to discredit, by contradictions, his own witness. The witness, having given absolutely no testimony in the case—whatever he said being of benefit to neither party and simply introductory in its character, and serving to show that plaintiff would not require him to be further examined —his further examination, unless he was to be considered the witness of defendant, was irregular. Defendant, having been permitted at the time to draw from him evidence not proper to be then given on cross-examination, must be regarded as introducing the witness as its own. The attorney of plaintiff, at the time, claimed that defendant made the witness its own; and the claim was denied by neither court nor defendant. Under these circumstances, the witness must be regarded as

3. ——: dismissal of witness: use by opposite party.

defendant's. It was, therefore, competent for plaintiff to contradict his statements.

V. The plaintiff introduced evidence tending to prove that the traveled track of the highway upon which he was when he received the injury, was, at a given point, nearer the railroad than at a subsequent time to which the evidence of certain witnesses related. This evidence was material, as it tended to show the extent which certain timbers piled along the railroad would obscure the view of the track. A witness for defendant was asked to state "what, if any, indications .there are on the surface of there having been a traveled track below the present traveled road and the railroad track?" The evidence was not admitted.

We think there was no error in excluding it. The accident occurred three or four years prior to the time the witness made the examination of the locality of which he was called to testify. He was not expected to state that appearances indicated that the traveled track was not, at the time of the accident, nearer the railroad than when he made his observations. His testimony, if admitted, would only have tended to establish the fact that, at the present, no appearances indicated there had been a traveled track in the place referred to by the other witness. This, of itself, would not amount to a contradiction of the positive testimony upon the subject; there was no other evidence which defendant claims tended that way.

VI. The defendant maintains that the verdict of the jury is in conflict with the evidence, which, it is claimed, was without conflict upon the point of contributory negligence on the part of plaintiff, pleaded as a defense to the action.

The evidence before us is not the same as that presented when the case was here on the former appeals. There is considerable proof for the plaintiff in addition to that found in the record when the case was first before us, which in a great degree, changes the effect of the whole testimony. It tends to support plaintiff's claim that he drove his team upon the track without having seen the approaching cars, which were hidden from his view by obstructions along the railroad. He

testifies positively that before he drove upon the crossing he looked for the cars and saw none. We are not able to say, from the whole evidence that the jury should have found this statement untrue, or that, at the time and from the place of his observation, the train which struck him was in view. Certainly we are unable to hold that the finding of the jury to the effect that he did exercise care, is so unsupported by the evidence that we are required to set aside the verdict under the familiar rules that prevail here.

VII. It follows, from the foregoing conclusions, that the Circuit Court did not err in refusing to instruct the jury that,

4. NEGLI-GENCE: railroads: question of fact. as a matter of law, the plaintiff so contributed to the injury by his own negligence, that he is not entitled to recover. This conclusion is not in conflict with our decision in the case when it was first here. 34 Iowa, 154. The evidence now before us is not identical with that contained in the record then. As we have said, it is very much stronger now for plaintiff. This difference is sufficient to change, materially, the effect to be given to the whole testimony. In the first appeal, as is stated in the opinion rendered therein, it appeared that plaintiff had an unobstructed view in the direction of the approaching train for 660 feet along the railroad, at the time he testifies he looked for the cars. There is evidence in the record now before us, upon which the jury could well have found that the train was hidden from his sight just before he drove upon the track. If he looked for the cars and on account of obstructions failed to see them, he cannot be held negligent in attempting to cross the railroad.

It is claimed that, conceding the existence of the obstruction as testified to by the plaintiff and his witnesses, namely, a pile of bridge timbers five or six feet high and five or six feet from the railroad track, yet, as it was fifty or sixty paces from the crossing, it presented no obstruction to the view of the approaching train at a point of observation ten paces from the crossing at which, plaintiff testifies, he looked for the cars. It is insisted that plaintiff's evidence must have been false in the statement that he did, at that point, look for the train, for

the reason that the timbers, which were piled up fifty or sixty paces east of the crossing, could not have obstructed his view of the railroad in the direction from which the cars approached. Reference is made to the plat found in the first opinion in this case (34 Iowa, 155), to support this position.

The testimony of plaintiff's witnesses, or of one at least, shows that the bridge timbers were piled within five or six feet of the railroad track. Now, it is very plain that the view of the railroad track by plaintiff, at a point ten paces from it, was obstructed by an object sufficiently high and five or six feet from the track fifty or sixty paces distant. His line of vision, it is true, extended to a point on the track beyond the obstruction, but the track beyond that point was concealed from him. Now, of course, the distance to that point depends upon the angle made by the line of vision and the track, which is not given. It is, therefore, impossible to determine just at what point the cars would come in view. But it is certain, as we understand the evidence, that the obstruction would hide the track from plaintiff standing at a point ten paces from the crossing, unless his position was less than five or six feet from the track. If the point was on a line at right angles with the railroad (which, as we understand the evidence, was upon a right line), the line of vision would strike the middle of the track sixty or seventy paces from the crossing, the obstruction being fifty or sixty paces therefrom. This line of vision would be lengthened in proportion as the angle of the line upon which the point of observation and the line of the track, became acute. At a point five paces from the track and ten from the crossing, the line of vision would strike the track not to exceed seventy or ninety paces; but it is not at all probable that a wagon would be driven over a railroad track on a line that would take it five paces from the track when ten paces from the point of crossing.

Notwithstanding all that has or may be said, it is mathematically certain that the obstruction, if it did exist (its existence is proved by more than one witness), interrupted plaintiff's vision, if he looked for the cars, at a point varying from sixty to ninety paces. The questions of the existence of the

obstruction and the act of plaintiff in looking for the cars, are of fact. We cannot say that the jury were prompted by prejudice or passion in finding these facts; there is direct evidence to support the finding of both facts; more than one witness testifies to the first; the plaintiff testifies positively that he did look for the cars when within ten paces of the railroad crossing. His evidence cannot be disregarded upon the ground that the track was at no point hidden from his view within a distance in which, if the cars had been seen, it would have been negligence to have attempted to cross the track. We have seen that the evidence justifies a different conclusion.

Now, was plaintiff negligent, as a matter of law, in attempting to cross the railroad after making an observation ten paces from the crossing when the line of his vision extended from sixty to ninety paces along the track? We think not.

The jury were authorized to find from the evidence that the train was running very rapidly, and that no signals of its approach were given. There is a conflict of evidence on these points, but it was the duty of the jury to settle the conflict. It cannot be claimed that there was no evidence to support their findings thereon, or there was such a want of evidence that we ought to set aside their verdict. They were justified in concluding that the cars ran ten times as fast as plaintiff drove his team. While he was passing over ten paces the cars ran one hundred. That he did not hear the train, the jury could have found upon plaintiff's evidence. It would have been contrary to the instincts which lead men, as well as all animals, to avoid danger, for plaintiff to have attempted the crossing with the train in view, having passed the bridge timbers, and distant less than ninety paces. The same instincts would have forbidden the attempt had he heard the cars at the same distance from the crossing. This consideration supports the evidence of plaintiff.

VII. It is lastly urged that the damages assessed by the jury are excessive. We think otherwise. We have approved verdicts for greater sums in cases where the injuries were no greater. *Collins v. City of Council Bluffs*, 32 Iowa, 324;

s. c., 35 Id., 433; *Rowell v. Williams*, 29 Id., 210; *Deppe v. C., R. I. & P. R. Co.*, 38 Id., 593.

AFFIRMED.

SEEVERS, CH. J., *dissenting.*—Being unable to concur in the foregoing opinion, I deem it proper to briefly state the reasons for my dissent therefrom.

. No one, unless it be the fireman on the train, except the plaintiff, testified in relation to the collision, and in this respect I do not understand it is claimed there is any difference in the testimony on this and either of the former trials.

When the cause was returned to the court below after it was first reversed by this court, the plaintiff amended his petition and stated that certain obstructions had been placed near the track by the defendant, which obstructed his view and prevented him from seeing the train, notwithstanding the use of due care and vigilance on his part, and the judgment of the court below is now affirmed, on the ground that the testimony in relation to these obstructions materially strengthens the testimony on the part of the plaintiff as to the question of contributory negligence on his part.

Deeming this to be a grave error, I desire to refer with some particularity to the evidence on this point. It would unnecessarily lengthen this opinion to quote all the testimony, but I will quote in full all that the plaintiff states. He testifies: " There were railroad timbers lying along the railroad piled up five or six feet high. This was piled up about sixty steps from the crossing. There were railroad ties piled up between the track and Mathews' fence. They obstructed my view and I could not see in."

Some of the other witnesses corroborate the testimony, and others introduced by himself do not support him in all that he has said.

It is a conceded fact that the plaintiff lived near the crossing and was daily in the habit of crossing the track at the point of collision.

This court having determined when this case was first here, that the plaintiff could not recover by reason of contributory

negligence on his part, and the testimony being in no wise different now from then, except as to the obstructions of which he speaks, the simple and single point for determination is, do such obstructions in any way or degree change the legal aspect of the case.

It will be observed the plaintiff places the obstructions sixty yards or steps from the point where the accident occurred. It is evident and a conceded fact, that the nearer the plaintiff got to the crossing the better was the view in the direction the train was coming. If the plaintiff had looked during the time he was traveling the sixty yards or steps, he must have seen the train; or if he had looked up the track just before he drove on, it is self evident to my mind and clear beyond question that he could have seen the train. The obstructions about which the plaintiff testifies could not in any degree whatever have prevented him from seeing the train, had he looked up the track when he was within ten steps of the crossing. To me this is self evident, and in my judgment a reference to the plat of the premises, on page 155, 34 Iowa, makes this so clear to the mind as to render it difficult for any amount of human testimony to make it obscure.

It is not due diligence, but is contributory negligence, for one acquainted with a crossing over a railroad track, and knowing when he is near it, not to look for an approaching train. *Benton v. Central R. R.*, 42 Iowa, 192. This last case is an authority in point against the opinion of a majority of the court in the case at bar.

It is true the plaintiff testifies he did look when he was ten steps distant from the crossing, but this testimony was effectually disposed of by this court on the former appeal. 34 Iowa, 159. It is there said, with reference to this very testimony, " that the conceded or undisputed facts being true, this testimony cannot, in the very nature of things, be also true. It constitutes, therefore, no conflict." If this was true then, it is equally so now.

In my opinion, the judgment of the court below should be reversed.

Justice ROTHROCK concurs in this dissent.