Ross C. MUELLER, appellee, v. GERHART ROBEN, appellant.

No. 49154.

(Reported in 82 N.W.2d 98)

APRIL 3, 1957.

Breese & Cornwell, of Mason City, for appellant.

Cardamon & Tapscott, of Des Moines, for appellee.

PETERSON, J.—On the morning of May 20, 1955, plaintiff left Des Moines for Mason City driving his new Buick car. He drove north on U. S. Highway 65. About four miles south of Rockwell a gravel road intersects the highway. Defendant was driving east on this gravel road, and when he came to the intersection he stopped at the stop sign about 12 to 16 feet west of the paving. This was about nine a.m. The day was clear, and the roads were dry. Defendant testified he looked north and saw a car about 900 feet away. He looked south and saw a car about 300 feet south of a bridge which was part of the highway. The north end of the bridge was 300 feet south of the intersection. The bridge was 80 feet long. Plaintiff testified defendant drove on the pavement and stopped, completely obstructing the east half of the road. Defendant, and the witness driving the car from the north, testified defendant drove across the pavement and proceeded east on the intersecting road. When plaintiff observed defendant drive on the pavement he turned his car to the right shortly after crossing the bridge. As shown by skid marks he put on his brakes, and his two right wheels ran along the shoulder until he reached the south edge of the intersecting road. His car then turned slightly toward the east with the skid marks of all four wheels showing. About 25 feet east of the paved highway his car struck a guardrail on the north side of the intersecting road and ran into a ditch 40 feet deep. Plaintiff suffered severe personal injuries. The jury returned a verdict in his favor in the amount of $5953.03. Defendant filed motion for new trial, and for judgment notwithstanding the verdict, which was overruled. He has appealed.

Appellant assigns two errors on which he relies for reversal: 1. The court erred in not directing a verdict in favor of defendant, alleging plaintiff was guilty of contributory negligence as a matter of law in failing to have his car under control when approaching an intersection, contrary to provisions of section 321.288, 1954 Code. 2. The trial court erred in submitting to the

jury as a specification of negligence the question of whether defendant failed to keep a proper lookout.

I. The pertinent portions of section 321.288 are as follows: "The person operating a motor vehicle or motorcycle shall have the same under control and shall reduce the speed to a reasonable and proper rate: * * * 3. When approaching and traversing a crossing or intersection of public highways * * *."

Plaintiff testified: he was driving between 65 and 70 miles an hour prior to reaching the bridge; he then slowed down, and when he saw defendant drive on the paved highway, he turned his car to the right; he drove his car as far east on the shoulder as possible without running off the shoulder; when he reached the north side of the intersecting highway he had his speed reduced to 35 miles per hour; after leaving the bridge he could not turn to the left, back of defendant, because a car was coming from the north; he could not stay in the east lane of travel because he would drive directly into defendant's car; his only unobstructed course of travel was to the right and in front of defendant. Defendant, and the lady driving the car from the north, both testified defendant had crossed the paving and was driving on east, and was several car lengths east of the pavement, when plaintiff drove his car into the ditch. The jury accepted plaintiff's statement as to what happened and unless there are prejudicial errors, the verdict of the jury is binding upon this court. The question is whether plaintiff reduced his speed to a reasonable and proper rate when approaching the intersection, taking into consideration all circumstances with which he was confronted. Appellant contends he did not, and that his car was not under control, and he was guilty of contributory negligence as a matter of law. Intersection cases are like so many other groups of cases, involving motor-vehicle accidents, with which we are constantly confronted. There are rarely two statements of fact exactly alike. The facts in this case are different from those in any previous case before this court. We can only rely on cases which are somewhat similar, and on our analysis of the situation under the facts.

We have often held that contributory negligence is an issue of fact for the jury, except where contributory negligence

of plaintiff is so palpable that reasonable minds cannot reach any other conclusion, in which case the question becomes one of law for the court. Barnes v. Barnett, 184 Iowa 936, 169 N.W. 365; Altfilisch v. Wessel, 208 Iowa 361, 225 N.W. 862; Tinley v. Chambers Implement Co., 216 Iowa 458, 249 N.W. 390; Minks v. Stenberg, 217 Iowa 119, 250 N.W. 883; Orth v. Gregg, 217 Iowa 516, 250 N.W. 113; Rogers v. Jefferson, 224 Iowa 324, 275 N.W. 874; Hawkins v. Burton, 1938, 225 Iowa 707, 281 N.W. 342; Schwickerath v. Maas, 230 Iowa 329, 297 N.W. 248; Davidson v. Vast, 233 Iowa 534, 10 N.W.2d 12; Beck v. Dubishar, 240 Iowa 267, 36 N.W.2d 438; Miller v. Griffith, 246 Iowa 476, 66 N.W.2d 505; Lauman v. Dearmin, 246 Iowa 697, 69 N.W.2d 49.

In Barnes v. Barnett, supra, plaintiff turned at the intersection of Thirty-sixth Street and Ingersoll Avenue in Des Moines from the northerly lane of the Avenue into the southerly lane. Defendant was 300 feet away when he started to turn. Plaintiff claims he turned his car to the east close to the curb with plenty of room for defendant to pass. Defendant's speed was from 40 to 50 miles an hour. Defendant's car struck plaintiff's car. We have circumstances somewhat similar to this case except there was a collision in the Barnes case, whereas in this case there was no collision. One question in the case was: did defendant's driver have her car under control approaching the intersection? We stated in the case at page 941 of 184 Iowa, page 367 of 169 N.W.: "But the existence of contributory negligence is peculiarly a jury question, and in our judgment the record does not reveal one of those cases where the evidence is so undisputed and convincing as to make the question one of law."

In Murphy v. Iowa Electric Co., 206 Iowa 567, 571, 572, 220 N.W. 360, 362, this court said: "The presence or absence of contributory negligence, generally speaking, is peculiarly a question for the jury, rather than the court, to detect and settle. * * * If there is a conflict in the evidence as to what the person accused of contributory negligence did or did not do, the question is then one for the jury. Likewise, even though it is known what was done by that individual in this regard, yet if his conduct is such that there may fairly be different opinions with

respect to it, and one man honestly and reasonably says it was in accord with ordinary prudence, while another, just as sincerely, and with equal reason, contends it was not, then there is a jury question." This was quoted with approval in Schwickerath v. Maas, supra.

 In the case at bar appellant contends plaintiff was approaching the intersection at such high rate of speed that he failed to have his car under control. The evidence shows without dispute plaintiff started to reduce his speed as he drove on the south end of the bridge, which was 380 feet south of the intersection. It is true he was still driving 35 miles an hour when he ran into the ditch, after putting on his brakes and skidding for a distance of 220 feet. This would indicate a high rate of speed in the inception, but his speed alone was not such as to justify a ruling of contributory negligence as a matter of law. We considered the question of speed in Davidson v. Vast, supra (233 Iowa, page 541, 10 N.W.2d, page 16), where we said: "Even if decedent were traveling at fifty miles per hour, we are not prepared to hold that he would thereby be guilty of contributory negligence as a matter of law. He had a right to assume, until he knew or in the exercise of reasonable care should have known otherwise, that any driver approaching from the east would comply with the statute governing the right of precedence." To this statement we added in Beck v. Dubishar, supra, at page 270 of 240 Iowa, "Whether appellee acted with reasonable caution in approaching the intersection is clearly a question for the jury under this record."

In Rogers v. Jefferson, supra, we stated at page 330 of 224 Iowa, page 878 of 275 N.W.: "Appellant contends that plaintiff was guilty of negligence per se in that he violated section 5031 [now 321.288] of the Code, which says that a person operating a motor vehicle shall have the same under control, and shall reduce the speed to a reasonable and proper rate when approaching and traversing intersections of public highways, for the reason that plaintiff admits that he did not reduce the speed of his car. * * * ordinarily and generally, the absence or presence of contributory negligence is peculiarly a question for the jury, and the court was therefore right in submitting this matter to the jury for their consideration and determination."

The purpose of a stop sign is that motorists approaching a main highway must stop, and if traffic is moving on the highway or is reasonably close, to wait until the roadway is clear. In this case defendant stopped at the stop sign. When he stopped he saw plaintiff's car 680 feet to the south. Plaintiff testified he saw defendant approach the highway. Being a main paved highway with stop signs at intersections he had the right to assume defendant would stop until approaching traffic had passed. We said in Orth v. Gregg, supra (217 Iowa, page 519, 250 N.W., page 115): "Plaintiff's right to assume that defendant would obey the law is an important consideration in determining what reasonable care required him to do for his own safety. * * * What constitutes such care is usually a jury question." When plaintiff saw defendant moving onto the highway he had a right to do whatever a reasonably prudent person would do to avoid a collision. In this case he moved as far to the right as he could on the shoulder and put on his brakes. A collision was avoided. His actions precipitated the driving of his car into the deep ditch at the side of the road. It is clear that reasonable minds could differ as to his contributory negligence under the circumstances. His conduct was not such that the question became one of law for the court. The question was clearly for the jury.

II. Appellant's second assignment of error is that the question of proper lookout on the part of defendant should not have been submitted to the jury as an element of negligence. What is proper lookout? In Webster's Dictionary lookout is defined as "a watch kept, as for something that may come or happen. * * * The proper object of one's watchful care or concern." With reference to motor-vehicle operation "lookout" is that watchfulness which a prudent and reasonable person must maintain for his own safety and the safety of others, taking into consideration the circumstances with which he is immediately concerned or confronted. When approaching a main highway the obligation of lookout means that the driver must be alert as to approaching cars. Davidson v. Vast, supra; Bannister v. Illinois Cent. R. Co., 199 Iowa 657, 202 N.W. 766; Smith v. Lamb, 220 Iowa 835, 263 N.W. 311; Lathrop v. Knight, 230 Iowa 272, 297 N.W. 291; Pazen v. Des Moines Transp. Co., 223 Iowa

23, 272 N.W. 126; Fischer v. Steinhauer, 233 Iowa 777, 10 N.W.2d 649; Tinley v. Chambers Implement Co., Miller v. Griffith and Lauman v. Dearmin, all supra.

In this case when defendant stopped at the stop sign he saw one car coming from the north and one from the south. He could have solved his problem by waiting from 5 to 10 seconds. When in the face of such a situation he drove onto the pavement he assumed a heavy lookout responsibility. There was a vital point at which defendant failed to look, when it might have been of value to both parties. It was at the point between stopping at the stop sign and reaching the west edge of the pavement. His testimony was as follows:

"Q. Now Mr. Roben, you testified that you stopped about a rod west of the intersection, which is sixteen feet, and that you looked? A. Twelve or sixteen feet. Q. And then as you drove in an easterly direction, just as you approached the slab of Highway 65, where was Mueller's car at that time? A. You can't see that on account of the bridge. At least *I didn't look that way* on account of the bridge railing." (Emphasis ours.)

It may be the bridge railing would hide the approach of plaintiff. It may be it would not. Defendant states he failed to look. While there are other elements in the situation which made it proper for the court to submit the question of lookout to the jury, this element alone was sufficient to raise a question concerning which reasonable minds could differ. In Davidson v. Vast, supra, this question was considered and supported by citations. Quoting (233 Iowa, page 537, 10 N.W.2d, page 14): "On direct examination defendant testified that he first looked to the north when he was six or eight feet east of the traveled portion of the gravel highway, that he saw nothing, but that he could then see north only about forty feet. He admitted that if he had driven three feet farther he could have seen about three hundred feet north. Defendant continued into the intersection without stopping. * * * While defendant was not legally obligated to look to his right from any particular point, ordinary care required him to maintain a reasonably efficient lookout, to look when it would be conducive to protection, when it would 'do him some good.' 2 Blashfield Cyclopedia of Automobile Law

and Practice, Perm. Ed., 230, 231, section 1038; id. 237, 241, section 1041; Smith v. Lamb, 220 Iowa 835, 263 N.W. 311; Bannister v. Illinois Cent. R. Co., 199 Iowa 657, 202 N.W. 766."

The majority said in Lauman v. Dearmin, supra, at page 702 of 246 Iowa, page 52 of 69 N.W.2d: "One operating a motor vehicle upon the highway must use ordinary care for the protection of himself and others thereon, which includes the maintaining of a proper lookout. Clayton v. McIlrath, 241 Iowa 1162, 44 N.W.2d 741, 27 A. L. R.2d 307; Hutchins v. LaBarre, 242 Iowa 515, 47 N.W.2d 269. This carries a responsibility not only for what he actually sees but also for what he should have seen by the use of ordinary care and diligence."

The question of proper lookout was considered by this court in Lathrop v. Knight, supra. One question in the case was similar to the question with which we are confronted in this case; as to whether or not the question of lookout should have been presented to the jury by the court or whether it should have been withdrawn from the consideration of the jury. In the Lathrop case we stated at page 278 of 230 Iowa, page 294 of 297 N.W.: "Finally, it is argued that the court erred in overruling appellant's motion to withdraw from the consideration of the jury appellee's specification of negligence No. 4, which charged the appellant with negligence because of her failure to maintain a proper lookout. There was evidence from which the jury could have found that appellant could have seen appellee's car for a distance of better than 130 feet had she been maintaining a proper lookout, and that she could have stopped her car within 70 feet. Thus the question of lookout was properly submitted."

In case of Pazen v. Des Moines Transp. Co., supra, two trucks were approaching each other on highway 6 in the little town of Ladora. They were driving on a rather sharp S curve. There was drastic contradiction in the testimony between the two drivers, the same as we have in this case. The court submitted to the jury, as ground of negligence No. 2, the question as to whether "the driver of defendant's vehicle failed to maintain a proper lookout for other vehicles on said highway." This is the question submitted by the trial court to the jury in this case. In the Pazen case concerning this question we said at page 30 of 223 Iowa, page 129 of 272 N.W.: "The weight of the evidence

was for the jury. They were entitled to draw reasonable inferences from the facts and circumstances disclosed by the testimony. In a great many of these accident cases the truth is hard to ascertain from the testimony. * * * We realize these matters are difficult and courts, judges and lawyers will differ in their interpretation and application, but as we view the question under the facts in this particular case, all three grounds of negligence were properly submitted to the jury."

The position in which defendant placed himself when leaving a place of complete safety back of the stop sign and moving onto the pavement, whether or not he stopped on the pavement, created a question as to lookout which was properly submitted to the jury.

III. The primary emphasis in appellant's argument as to his first assignment of error is placed on the proposition that if plaintiff violated the provisions of section 321.288, and what his counsel calls "the law of the road", he was guilty of contributory negligence per se. He cites a number of decisions in support of this theory. The difficulty with the argument is that this is only the first step in arriving at a proper conclusion. The next and important step is: Was plaintiff guilty of violating "the law of the road?" Were the circumstances such that the court could properly rule plaintiff was guilty of contributory negligence, or was it a question for the jury? The trial court held it was for the jury, the jury decided by its verdict plaintiff was not guilty of contributory negligence, and we have approved the ruling of the trial court in Division I. As typical of the cases cited by appellant, we will refer to two fairly recent cases. Appellant cites case of Falt v. Krug, 239 Iowa 766, 773, 32 N.W.2d 781, 785, with a quotation that "A failure to observe the above statute would be negligence" (referring to section 321.288). The case, in fact, sustains appellee's contentions. The trial court directed a verdict in favor of defendant. This court reversed the trial court and held the case should be submitted to the jury. On the question of contributory negligence we stated: "* * * appellant in proceeding to cross such intersection was not guilty of contributory negligence as a matter of law. Under the record, we think that it was a question of fact as to which of the parties had the right of way."

Appellant cites and quotes from Lynes v. Schmolt, 241 Iowa 1303, 1305, 45 N.W.2d 221. The facts are not analogous to the case at bar. Plaintiff was driving his motorcycle at a speed of from 70 to 80 miles per hour. He saw defendant at a distance of 300 feet, but testified he did not " 'brake down as much as I could because I didn't dare to skid the cycle'." A collision occurred. It is clearly evident plaintiff did not have his motorcycle under control as he approached the intersection. The situation is one where reasonable and prudent minds would not differ as to plaintiff's contributory negligence.

In connection with appellant's assignment of error as to proper lookout being submitted to the jury as a ground of negligence, appellant primarily argues the general proposition that if a specification of negligence is not supported by evidence it should not be submitted to the jury by the trial court. As a general statement of law this is correct. Again it becomes a question as to whether or not the testimony, and proper inferences therefrom, were sufficiently conflicting so that a jury question was generated, as outlined in Division II. We will refer to only three of appellant's citations.

In Hartman v. Lee, 223 Iowa 32, 272 N.W. 140, defendant's automobile struck a pedestrian who was either walking on the paved portion of the highway or suddenly stepped on the paving from the shoulder. Appellant contended the court should have submitted the question of proper lookout to the jury as a ground of negligence. We held that in view of defendant's testimony that he had seen plaintiff's decedent continuously for 100 feet before the car struck him, there was no question of lookout involved in the case. This creates a completely different situation from the one in the case at bar where there was a space of time in which defendant by his own testimony failed to keep a lookout.

In Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 61 N.W.2d 696, two trucks were passing on an icy highway during a sleet storm. The accident occurred because defendant's truck skidded into plaintiff's truck. One contention was defendant had not maintained proper lookout. The trial court directed a verdict and we affirmed the case. The facts and circumstances in the case

are so different from the case at bar, as to the question of lookout, that there is no helpful comparison in this citation.

Appellant quotes from a Court of Appeals case, originally decided in Iowa, as to the court's ruling on lookout. Brinegar v. Green, 117 F.2d 316. Plaintiff was riding with her husband in a car driving east. A heavy snowstorm was in progress. Defendant was driving west when the right rear wheel of her car ran off the pavement. In trying to bring it back she drove into the south lane and was struck by the car driven by plaintiff's husband. The District Court, Judge Scott, directed a verdict for defendants. Court of Appeals, Eighth Circuit, reversed and remanded, but not on the assignment of error as to lookout. The court properly held there was no question of defendant's lookout involved. From above brief statement it is obvious that with plaintiff's car suddenly, and without warning, being driven into defendant's pathway, no question of lookout on the part of defendant was present in the case.

The ruling of the trial court overruling motion for new trial and judgment notwithstanding the verdict was correct and is affirmed.—Affirmed.

All Justices concur.